UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MCPARTLIN,

       Plaintiff,

v.

MINORITY AUTO HANDLING
SPECIALIST, INC., NANCY O'CONNELL,
ANDREW GIPE, NORMAN S. KLEIN III,
and TRAVIS COLLINS,

       Defendants.
_____/

Case No. 23-cv-10695
Honorable Linda V. Parker

**<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND</u>**

On March 24, 2023, Defendants removed this action from state court asserting that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), completely preempts the state-law claims alleged in Plaintiff's Complaint. Disagreeing, Plaintiff filed a motion to remand. (ECF No. 6.) The motion has been fully briefed. (ECF Nos. 7, 8.) Because the Court concludes that at least one of Plaintiff's claims is completely preempted by § 301, it is denying the motion to remand.

**I.  Standard of Review**

A motion to remand is analyzed by "apply[ing] a test similar to, but more lenient than," the standard for a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (2012) (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952-54 (6th Cir. 2011)). The court "may 'pierce the pleading' and consider summary judgment evidence, such as affidavits presented by the parties." *Id.* "The court may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Id.* (quoting *Walker*, 443 F. App'x at 955-56).

## II.   Factual and Procedural Background

Defendant Minority Auto Handling Services, Inc. ("MAHS") employed Plaintiff John McPartlin, II at MAHS' dock terminal in Woodhaven, Michigan. McPartlin, like other MAHS employees, was a member of the Teamsters Truck Drivers Local Union No. 299 ("Union"). (*See* ECF No. 7-2; ECF No. 7-11 at PageID 511, ¶ 18.) Defendant Nancy O'Connell is MAHS' General Manager at the Woodhaven terminal. Defendant Travis Collins was the Dock Manager. (*See* ECF No. 7-5 at PageID 484.) Defendants Norman Klein and Andrew Gipe acted as MAHS' corporate representatives, involved in the formation of the Collective Bargaining Agreement between MAHS and the Union.

In February 2020, McPartlin slipped and fell at work and injured his left shoulder. (*See* ECF No. 7-4 at PageID 480.) Wage loss benefits were paid voluntarily to McPartlin, and he remained off work for almost a year until a dispute

arose concerning his entitlement to continued benefits. (*See* ECF No. 7-4.) On March 8, 2021, McPartlin filed an Application for Mediation of Hearing with the Michigan Worker's Disability Compensation Agency. (*Id*.)

McPartlin continued to remain off work until February 4, 2022, when he appeared unannounced and without any prior communication at the Woodhaven facility with a note from a physician's assistant, dated February 1, 2022, stating he was able to return to work. (ECF No. 7-18.) MAHS viewed McPartlin's conduct to be a violation of the work rules and issued a reprimand to him. (*Id*.) McPartlin filed a grievance disputing the reprimand and claiming that MAHS violated the CBA by refusing to allow him to work that day even though he had undergone an employer physical as the CBA required. (ECF No. 7-19.)

On March 10, MAHS discharged McPartlin pursuant to the CBA for "theft or dishonesty of any kind." (ECF No. 7-5.) The Discharge states that MAHS received medical records that conflicted with McPartlin's February 1 return-to-work note and indicated that he was still under a doctor's care, had postponed shoulder surgery to a later date, and would remain off work if pain persists. (*Id*.) On March 18, MAHS issued a letter to McPartlin, notifying him that he also was being terminated based on Article 7 of the CBA, which required termination after an absence of 24 months due to injury. (ECF No. 7-7.) McPartlin grieved both

3

discharge notices. (ECF Nos. 7-6, 7-8.) McPartlin cited several provisions of the CBA in support of his grievances. (*Id.*)

The Union initiated an investigation in response to McPartlin's grievances, and Greg Macoit, the acting Union Steward, submitted a request for information to MAHS, which was received by O'Connell. (*See* ECF No. 7-15; ECF No. 7-14 at PageID 522, ¶ 8.) Don Moran, the Vice President and Business Representative for the Union (ECF No. 7-11 at PageID 510, ¶ 10), also sent a request for information to Klein (ECF No. 7-15). Gipe, O'Connell, Klein, and Collins made oral and/or written statements in connection with the investigation. (ECF No. 7-11 at PageID 508-10, ¶¶ 3, 5-7, 10-13; ECF No. 7-12 at PageID 513-15, ¶¶ 2-3, 5, 7, 10; ECF No. 7-13 at PageID 517-18, ¶¶ 2-3, 5, 8-9; ECF No. 7-14 at PageID 521-23, ¶¶ 2-3, 5, 7-8, 11-12.)

Specifically, on April 20, 2020, Gipe told Moran that McPartlin committed acts of theft and dishonesty during and/or in relation to: (a) his employment; (b) his return to work; (c) medical treatment and care he received as a result of the injuries he incurred on February 6, 2020; and (d) his medical treatment concerning his ability to return to work following his injuries. (ECF No. 1-1 at PageID 10, ¶ 28(a)-(d).) Gipe also told Moran, in essence, that McPartlin was dishonest and a thief, particularly with respect to the extent of his injury from the February 6 accident and ability to return to work thereafter. (*Id.* ¶ 28(e)-(i).)

Klein made similar statements to Moran on March 21 and April 20, 2022. (ECF No. 1-1 at PageID 12, 14, ¶¶ 37, 46.)  Klein also made similar statements in a written communication to the Union on April 8, 2022 (*id.* at PageID 12-14, ¶¶ 40, 46), and to the Industrial Board of Arbitration on April 21, 2022 (*id.* at PageID 13-14, ¶¶ 43, 46).

Around March 18, 2022, Collins made similar statements, in writing, to the Union, Moran, and Macoit.  (ECF No. 1-1 at PageID 17-18, ¶¶ 60, 61.)  As the acting Union Steward for the Union, Macoit would have been entitled under the CBA to receive information regarding McPartlin's discharges in connection with the investigation of McPartlin's grievances of those discharges.  (ECF No. 7-14 at PageID 522, 523, ¶¶ 8, 11; ECF No. 7-11 at PageID 510, ¶ 13.)  Between March 21 and 28, 2022, Collins made similar statements to Macoit and Bill Carson.  (ECF No. 1-1 at PageID 16-17, 18, ¶¶ 56-58, 61.)  Carson was a Union employee who acted as a witness on behalf of the Union with respect to Macoit's inquiries to MAHS regarding McPartlin's discharges.  (ECF No. 7-11 at PageID 510, ¶ 13.)  Collins also made similar statements to Moran around April 20.  (*Id*. at PageID 17, 18, ¶¶ 59, 61.)  O'Connell made similar statements to Macoit and Carson between March 21 and 26, 2022, and on March 28, 2022.  (*Id*. at PageID 20, ¶¶ 70-72.)

McPartlin filed this lawsuit against MAHS, O'Connell, Gipe, Klein and Collins in Wayne County Circuit Court on February 14, 2023.  (ECF No. 1-1.)  In

5

Count I of his Complaint, McPartlin alleges that MAHS retaliated against him in violation of the Michigan Worker's Disability Compensation Act of 1969, Mich. Comp. Laws § 418.301(13). In the remaining counts, McPartlin alleges defamation based on the above-described statements against Gipe (Count II), Klein (Count III), Collins (Count IV), O'Connell (Count V), and MAHS (Count VI).

As indicated, Defendants removed the action to federal court on March 24, asserting that the alleged claims are preempted by the LMRA.

### III. Applicable Law and Analysis

#### A. Preemption Generally

Pursuant to Section 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The question of whether federal-question jurisdiction exists generally turns upon application of the "well-pleaded complaint rule"—that is, whether a "federal question is presented on the face of [the] plaintiff's properly pleaded complaint." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). (internal citation omitted).

It is well established, however, that "[i]n the context of employment-related actions, . . . a claim purportedly based solely on state law may, under appropriate circumstances, be removable because § 301 of the LMRA has preempted that

particular area of state law." *Id.* In that instance, the state law claim is deemed to be a federal claim. *Id.* (quoting *Caterpillar*, 482 U.S. at 393) ("[A]ny claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.") Yet, it also is "settled law" that a federal defense may not be the basis of removal to federal court. *Caterpillar*, 482 U.S. at 393; *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (internal citations omitted) (Even "a defense that relies on the preclusive effect of a prior federal judgment or the preemptive effect of a federal statute will not provide a basis for removal.").

    A court's determination of whether a state law claim is preempted by the LMRA focuses on whether the state law "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). As the Supreme Court subsequently explained, a state law is not preempted by the LMRA if "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 US. 399, 407 (1988). Stated differently, "Section 301 preempts only state law claims that are substantially dependent on analysis of a collective-bargaining agreement …, not claims that only tangentially involve CBA

7

provisions." *Fox v. Parker-Hannifin Corp.*, 914 F.3d 795, 799-800 (6th Cir. 1990) (internal quotation marks and citations omitted).

The Sixth Circuit has developed a two-step approach for determining whether § 301 preempts a state-law claim:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (internal citations omitted). When assessing the first criteria, "the court . . . looks to the essence of the plaintiff's claim" to decide if "the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id*. (citing *Terwilliger v. Greyhound Lines, Inc.*, 882 F.3d 1033, 1037 (6th Cir. 1989), *cert. denied*, 495 U.S. 946 (1990)). "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id*. (citing *Dougherty v. Parsec, Inc.*, 872 F.2d 766, 770 (6th Cir. 1989)).

It bears repeating that "neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *Id*. (citing *Fox*, 914 F.2d at 800). Therefore, when deciding the preemptive effect of

8

§ 301 on a particular claim—as opposed to the success of the plaintiff's claim on a motion to dismiss or for summary judgment—the court evaluates only the elements the plaintiff needs to prove the claim or the plaintiff's prima facie case where a burden-shifting framework is involved. *See Howard v. Cumberland River Coal Co.*, 838 F. Supp. 2d 577, 580-82 (E.D. Ky. 2011) (distinguishing between the standard in the jurisdictional context versus the merits stage); *Medlen v. Estate of Meyers*, 273 F. App'x 464, 468-69 (6th Cir. 2008) (citing *Alongi v. Ford Motor Co.*, 386 F.3d 716, 727 (6th Cir. 2004)) (looking only at the elements of the plaintiff's claim and disregarding the defendant's defense when deciding whether the claim is preempted).

If the Court finds any of McPartlin's claims completely preempted by § 301, it must deny the motion to remand. That is because the Court has federal subject matter jurisdiction under § 1331 if at least one of his claims is preempted.[1]

### B. Application to Plaintiff's Defamation Claim

Defamation, under Michigan law, requires proof of the following:

> 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

---

[1] Even if some of McPartlin's claims are not preempted, the Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

*Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) (citing *Rouch v. Enquirer & News*, 487 N.W.2d 205, 211 (Mich. 1992)); *see also DeCoe*, 32 F.3d at 217 (citing *New Franklin Enters. v. Sabo*, 480 N.W.2d 326, 328 (Mich. Ct. App. 1991), *appeal denied*, 482 N.W.2d 760 (Mich. 1992)). When deciding whether the plaintiff has satisfied the second element, "the court must keep in mind that "qualified privilege extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty." *DeCoe*, 32 F.3d at 217 (quoting *Merritt v. Detroit Mem'l Hosp.*, 265 N.W.2d 124, 127 (Mich. Ct. App. 1978)) (brackets and ellipsis omitted). *DeCoe* is instructive in analyzing whether the elements of a state-law defamation claim—particularly the second element—require interpretation of a CBA and, therefore, § 301 preemption.

In *DeCoe*, the plaintiff filed a complaint in state court alleging *inter alia* defamation by his employer, General Motors ("GM"), and several co-workers, based on their allegations that he engaged in sexual harassment. 32 F.3d at 214. The plaintiff claimed that a GM plant manager induced the individual defendants to defame him in order to deprive him of his committeeman post with the UAW— the union representing GM employees. *Id.* at 215. The CBA between GM and the UAW incorporated a sexual harassment policy which prohibited sexually-oriented behavior and established procedures for submitting and adjudicated claims of

10

sexual harassment. *Id.* at 214-15. Sexual harassment claims were subject to the CBA's grievance and arbitration procedures. *Id.* at 217. The policy "imposed a duty on GM, the individual defendants, and the UAW to identify and resolve harassment complaints." *Id*. at 217.

The Sixth Circuit concluded that § 301 preempted the plaintiff's defamation claims, finding "it . . . difficult to understand how [he] could establish that the challenged publications were unprivileged . . . without interpreting the CBA provisions that identified the duties imposed on all defendants." *Id.* The court drew an analogy to *Lueck*, "[b]ecause the collective bargaining agreement governing the plaintiff's benefits established the manner for handling benefits claims" and, therefore, "the CBA, not state law, set the terms of the insurer's duty." *DeCoe*, 32 F.3d at 217 (citing *Lueck*, 471 U.S. at 216-18). Other courts have found state-law defamation claims preempted by § 301 because the issue of privilege required interpretation of a CBA. *See, e.g., Baker v. Royce*, 205 F. Supp. 3d 912, 918 (E.D. Mich. 2016); *Reynolds v. Ferguson*, 73 F. Supp. 2d 841, 846 (W.D. Mich. 1999); *Crawford v. TRW, Inc.*, 815 F. Supp. 1028, 1034-35 (E.D. Mich. 1993); *Autry v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. Serv. Workers Int'l Union*, No. 11-cv-12462, 2012 WL 1554913, at *9 (E.D. Mich. Apr. 30, 2012); *Farmer v. Gen. Mills Cereals Properties, LLC*, No. C-1-05-100, 2005 WL 1705090, at *6 (S.D. Ohio July 20, 2005).

11

The same is true here. McPartlin's Complaint does not identify the context in which the alleged defamatory statements were made. (*See generally* ECF No. 1-1.) Defendants attest, however, that all of the statements were made to Union officials or the Industrial Board of Arbitration in connection with the investigation and adjudication of McPartlin's grievances regarding his termination. (*See generally* ECF Nos. 7-11 to 7-14.) Plaintiff does not dispute Defendants' assertions. (*See generally* ECF No. 8.) Therefore, as in the cases cited above, interpretation of the CBA is required to assess the relative interests of Defendants, the Union, and the Industrial Board of Arbitration in the information communicated and, accordingly, whether Defendants' statements were unprivileged.

While McPartlin asserts several arguments for why his worker's compensation act retaliation claim is not preempted by § 301, he glosses over his defamation claims and fails to address Defendants' arguments for why those claims are preempted. The Court holds that they are for the reasons discussed above. Further, "courts have repeated[ly] held that defamation claims predicated upon allegedly false statements made during the course of a grievance or arbitration procedure are preempted under Section 301." *Crawford*, 815 F. Supp. at 1035 (citing *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir. 1989); *Kindness v. Spang*, 716 F. Supp. 1535 (M.D. Pa. 1987)); *see also Furillo v. Dana*

12

*Corp.*, 866 F. Supp. 842, 848-49 (E.D. Penn. 1994) (collecting cases holding that § 301 preempts defamation claims predicated upon allegedly false statements made during the course of a grievance procedure).

## IV.   Conclusion

For the reasons stated, the Court concludes that, at least, McPartlin's defamation claims are preempted by federal law.  The Court, therefore, has federal subject matter jurisdiction.

Accordingly,

**IT IS ORDERED** that the motion to remand (ECF No. 6) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 12, 2023